UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ROGER D. DREESMAN, | ) | Case No.: 13-CV-02009-LHK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT; GRANTING |
| CAROLYN W. COLVIN, Acting | ) | DEFENDANT'S CROSS-MOTION FOR |
| Commissioner, Social Security Administration, | ) | SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Roger Dreesman ("Dreesman") appeals a final decision of the Commissioner of Social Security ("Commissioner") denying Dreesman's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Before the Court are Dreesman's motion for summary judgment or, in the alternative, for remand, ("Pl. MSJ") ECF No. 16, and the Commissioner's cross-motion for summary judgment, ("Def. MSJ") ECF No. 17. Both motions are fully briefed. *See* Pl. MSJ, Def. MSJ, ("Pl. Reply") ECF No. 18. Upon consideration of the briefing, the record in this case, and for the reasons set forth below, the Court DENIES Dreesman's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.[1]

---

[1] Dreesman has also filed a Motion for Leave to File Excess Pages. ECF No. 15. This motion is GRANTED. The Court notes, however, that the Motion for Leave to File was filed simultaneously with a version of Dreesman's Motion for Summary Judgment that exceeds the page limits set by

1

United States District Court
For the Northern District of California

I.      BACKGROUND

A.      Plaintiff's Age and Educational, Vocational, and Medical History

Dreesman was born in 1957. Admin. R. ("AR") 60. Dreesman completed an associate's degree in computer technology. AR 83. Dreesman last worked on February 11, 2010 at which time he worked in technical support for a manufacturer of keycard access systems. AR 79, 152. Prior to the technical support job, Dreesman worked in a variety of functions in the electronics industry, including manufacturing, quality assurance, field service, technical support, and phone support. AR 68. Dressman also worked as an unarmed security guard for several years. AR 75-77.

Dreesman suffers from an anxiety disorder, panic attacks, and migraines. AR 86-87, 91. Dreesman has also been diagnosed with obstructive sleep apnea and gastroesophageal reflux disease. AR 24.

B.      Procedural History

On January 4, 2011, Dreesman applied for a period of disability and disability insurance benefits, alleging that he had become disabled on February 11, 2010, at the age of fifty-three. AR 22. Dreesman alleged disability resulting from a panic disorder, chronic depression, migraines, and high blood pressure. AR 111. Dreesman's application was denied initially and upon reconsideration. AR 22, 111, 119. An Administrative Law Judge ("ALJ") conducted a hearing on May 2, 2012. AR 22, 63-108. On May 23, 2012, the ALJ issued a written decision concluding that Dreesman was not disabled and therefore was not entitled to benefits. AR 22-34.

The ALJ first determined that Dreesman had acquired sufficient quarters of coverage to remain insured through September 30, 2015. AR 22, 24. The ALJ then applied the five-step evaluation process for determining disability described in 20 C.F.R. § 404.1520(a). AR 23. At step one, the ALJ found that Dreesman had not engaged in substantial gainful activity since February 11, 2010, the alleged onset date. AR 24. At step two, the ALJ concluded that Dreesman suffers from a combination of severe impairments consisting of migraines, hypertension, panic and anxiety

the Civil Local Rules. In the future, counsel is instructed that any motion to file excess pages must be filed no fewer than 14 days before filing the motion for which additional page allowances are sought.

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

disorder without agoraphobia, and depressive disorder. *Id.* The ALJ determined that Dreesman's

sleep apnea and gastroesophageal reflux disease were not severe impairments, as the conditions

had been successfully controlled through CPAP therapy and medication. *Id.* The ALJ also

determined that Dreesman did not suffer from a mood disorder because the diagnosis was not

based on observations made by an acceptable medical source. AR 25. At step three, the ALJ found

that Dreesman's impairments did not meet or medically equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1. *Id.*

      Prior to step four, the ALJ found that Dressman is unable to sustain more than unskilled

work and work requiring more than occasional interaction with others, and that Dreesman had the

residual functional capacity ("RFC") to perform medium work as defined by 20 CFR 404.1567(c),

with exceptions for exposure to extreme heat and sunlight. AR 27. At the hearing, the ALJ asked

the vocational expert if a person with Dreesman's physical limitations could perform his prior

work. AR 103-105. The vocational expert testified that such a person would not be able to perform

his previous work, but would be able to work as a janitor or kitchen helper. AR 104.

      At step four, the ALJ found that Dreesman is unable to perform any past relevant work. AR

33. At step five, the ALJ found that there are jobs that exist in significant numbers in the national

economy that Dreesman can perform. *Id.* As a result, the ALJ concluded that Dreesman has not

been under a disability as defined in the Social Security Act. AR 34. The Appeals Council denied

Dreesman's request for review on February 28, 2013, making the ALJ's decision the final decision

of the Commissioner. AR 1. Dreesman timely filed a complaint seeking judicial review of the

Commissioner's decision in this Court on May 1, 2013. ECF No. 1.

## II.    LEGAL STANDARD

### A.    Standard of Review

      This Court has the authority to review the Commissioner's decision to deny benefits. 42

U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by

substantial evidence or if it is based upon the application of improper legal standards. *See Morgan*

*v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d

3

1    521, 523 (9th Cir. 1995) (per curiam). In this context, "substantial evidence" means "more than a

2    mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind

3    might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v.*

4    *Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence

5    exists to support the Commissioner's decision, the court examines the administrative record as a

6    whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v.*

7    *Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational

8    interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523;

9    *Drouin*, 966 F.2d at 1258.

10          **B.      Standard for Determining Disability**

11          The Social Security Act defines disability as the "inability to engage in any substantial

12   gainful activity by reason of any medically determinable physical or mental impairment which can

13   be expected to result in death or which has lasted or can be expected to last for a continuous period

14   of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that

15   a claimant is unable to do her previous work, and cannot "engage in any other kind of substantial

16   gainful work which exists in the national economy," given her age, education, and work

17   experience. 42 U.S.C. § 423(d)(2)(A).

18          "ALJs are to apply a five-step sequential review process in determining whether a claimant

19   qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

20   At step one, the ALJ determines whether the claimant is performing "substantial gainful activity."

21   20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. If not, the analysis proceeds to

22   step two. At step two, the ALJ determines whether the claimant suffers from a severe impairment

23   or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled.

24   If so, the analysis proceeds to step three. At step three, the ALJ determines whether the claimant's

25   impairment or combination of impairments meets or equals an impairment contained in 20 C.F.R.

26   Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is

27   disabled. If not, the analysis proceeds to step four. At step four, the ALJ determines whether the

28

**United States District Court**
For the Northern District of California

4

1   claimant has the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If

2   so, the claimant is not disabled. If not, the analysis proceeds to step five. At step five, the ALJ

3   determines whether the claimant can perform other jobs in the national economy. 20 C.F.R.

4   § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

5           "The burden of proof is on the claimant at steps one through four, but shifts to the

6   Commissioner at step five." *Bray*, 554 F.3d at 1222. "The Commissioner can meet this burden

7   through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines

8   at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

9   **III.    DISCUSSION**

10          Dreesman raises five objections to the ALJ's determination. First, Dreesman challenges the

11  ALJ's finding that certain portions of the medical opinions of Dreesman's treating physician and

12  the consultative psychological examiner were not supported by objective evidence. Pl. MSJ at 16-

13  18. Second, Dreesman challenges the ALJ's finding that Dreesman was not fully credible. *Id.* at

14  19-21. Third, Dreesman argues that the ALJ improperly failed to address Dreesman's statements

15  concerning the side effects of his medications. *Id.* at 22-24. Fourth, Dreesman contends that the

16  ALJ improperly discounted the lay testimony of Dreesman's wife. *Id.* at 25-28. Fifth, Dreesman

17  asserts that the ALJ erred by not including all of Dreesman's physical and mental limitations in the

18  hypotheticals posed to the vocational expert. *Id.* at 28-29. The Court first considers the relevant

19  medical evidence, and then turns to each of Dreesman's arguments.

20          **A.      Relevant Medical Evidence**

21          "There are three types of medical opinions in social security cases: those from treating

22  physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r of Soc.*

23  *Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to

24  the opinion of a treating source than to the opinion of doctors who do not treat the claimant."

25  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in

26  turn, entitled to greater weight than the opinion of a nonexamining physician." *Id.*

27

28

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Accordingly, when evaluating medical evidence, an ALJ must give a treating physician's opinion "substantial weight." *Bray*, 554 F.3d at 1228. "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830). "However, 'the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.'" *Id.* (quoting *Thomas*, 278 F.3d at 957).

The record evidence regarding Dreesman's migraine headaches and depression and anxiety disorders is summarized below:

### 1.    Andrew Prodromou, M.D. (Treating Physician)

Dr. Andrew Prodromou is Dreesman's primary care physician. AR 28, 400. On October 1, 2008, Dreesman reported to Dr. Prodromou that he was having migraines on a near-daily basis. AR 283. Dr. Prodromou noted that Dreesman also reported depression symptoms, which were worsened by Dreesman's headaches. *Id.* On October 31, 2008, Dr. Prodromou noted that Dreesman's migraines and depression appeared to be improving after Dreesman began taking Cymbalta. AR 282. Dr. Prodromou reiterated that Dreesman's migraines and depression appeared to be well-controlled with medication following a January 8, 2009 visit. AR 280.

On October 30, 2009, Dr. Prodromou reported that Dreesman's migraines and depression were no longer adequately controlled and that Dreesman was again experiencing migraines on a near-daily basis. AR 274. Dr. Prodromou switched some of Dreesman's medications and referred him to a neurologist to aid in the medical management of Dreesman's migraine headaches. *Id.*

On November 23, 2009, Dr. Prodromou reported that Dreesman's migraines and depression were under better control following changes to Dreesman's medications. AR 271. Dr. Prodromou noted that Dreesman would be following up further with his neurologist. *Id.*

On February 11, 2010, the alleged onset date of Dreesman's disability, AR 22, Dreesman reported to Dr. Prodromou that he was suffering from worsening anxiety symptoms. AR 268. Dreesman stated that he was under stress at work, that he had a shorter temper, and that his anxiety

**United States District Court**
For the Northern District of California

1    was causing more frequent migraines. *Id.* Dr. Prodromou prescribed additional medication to help

2    Dreesman cope with his anxiety. AR 269.

3          On March 11, 2010, Dr. Prodromou reported that Dreesman's anxiety had not improved

4    since his previous visit. AR 267. Dreesman further reported that the increased dosage of one of his

5    medications was causing him to feel "cloudy." *Id.* Dr. Prodromou switched Dreesman off the

6    medication suspected of causing this side effect. AR 268.

7          On April 5, 2010, Dr. Prodromou again reported that Dreesman's anxiety had not improved

8    and that Dreesman was not feeling "mentally as sharp," possibly as a result of his medications. AR

9    266. Dr. Prodromou's progress note mentions that Dreesman's migraines continued to occur. *Id.*

10         On May 5, 2010, Dreesman reported to Dr. Prodromou that his anxiety symptoms had

11   decreased and that he was not suffering any current depression symptoms. AR 260.

12         On November 3, 2010, Dr. Prodromou reported that Dreesman was once again suffering

13   anxiety symptoms, and that these were likely related to his wife's recent breast cancer diagnosis.

14   AR 254. Dr. Prodromou further reported that Dreesman's migraines were occurring with increased

15   frequency. *Id.*

16         At a January 7, 2011 visit, Dr. Prodromou reported that Dreesman was still having anxiety

17   symptoms and frequent migraines. AR 253. Dr. Prodromou started Dreesman on a new medication

18   to control his anxiety and recommended that Dreesman attend counseling for this issue. AR 254.

19   On February 11, 2011, Dr. Prodromou noted that Dreesman was tolerating his new medication well

20   but that the medication had not provided much benefit. AR 412-413. Dr. Prodromou stated that

21   Dreesman continued to look for counseling. AR 413. On March 24, 2011, Dreesman again reported

22   that while he was tolerating his medication, the medication was still not fully controlling

23   Dreesman's anxiety. AR 411. Dreesman further stated that he was having frequent migraines. *Id.*

24         Dr. Prodromou saw Dreesman again on April 27, 2011. AR 410. Dreesman reported that

25   both his anxiety and his headaches were not fully under control. *Id.* Dr. Prodromou noted that

26   Dreesman's depression symptoms had returned as well. *Id.* Dr. Prodromou further noted that

27   Dreesman "saw a psychologist who recommended he establish with a psychiatrist," *id.*, a

28

7

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

1    recommendation with which Dr. Prodromou concurred, AR 411. At a May 23, 2011 visit, at which

2    Dreesman reported that his anxiety was still not under control, AR 409, Dr. Prodromou noted that

3    Dreesman was scheduled to see a psychiatrist that week. *Id.*

4        On July 21, 2011, Dr. Prodromou reported that Dreesman continued to have frequent

5    migraines. AR 451. Dr. Prodromou noted that Dreesman had seen a psychiatrist who felt that some

6    of Dreesman's other medical problems were likely caused by the numerous medications Dreesman

7    was taking for his migraines. *Id.*

8        On February 1, 2012, Dr. Prodromou reported that Dreesman continued to get migraines.

9    AR 446. Dr. Prodromou also noted that Dreesman was complaining that his medications made him

10    drowsy and reduced the clarity of his thinking. AR 447. Dreesman continued to suffer symptoms of

11    depression. *Id.*

12        Dr. Prodromou completed a medical source statement in support of Dreesman's disability

13    claim on April 28, 2011. AR 400-403. Dr. Prodromou described Dreesman's migraines as

14    "severe," stating that they occurred four times per month, with a duration of one to two days per

15    episode. AR 400. Dr. Prodromou stated that during a migraine episode Dreesman "[b]ecomes

16    completely incapable of normal routine," *id.*, and opined that Dreesman would be "precluded from

17    performing even basic work activities" during a migraine, AR 402. Dr. Prodromou concluded that

18    Dreesman was incapable of performing even low stress jobs as a result of his migraines. *Id.* Dr.

19    Prodromou also completed a mental medical source statement, in which he concluded that

20    Dreesman's anxiety and depression similarly rendered him incapable of performing even low stress

21    work. AR 404-407.

22          **2.    Jay Ronald Hess, M.D. (Treating Neurologist)**

23        Dr. Jay Ronald Hess, Dreesman's treating neurologist, first saw Dreesman for a

24    consultation regarding Dreesman's migraine headaches on November 19, 2009. AR 272. Dr. Hess

25    stated that Dreesman reported having approximately one migraine a month and that numerous

26    medications had not had much effect on controlling Dreesman's migraines. *Id.* Dr. Hess concluded

27    that Dreesman suffered from "[m]igraine without aura," and that some of Dreesman's headache

28

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

1    symptoms might be related to medication overuse. AR 273. Dr. Hess switched some of Dreesman's

2    medications and instructed Dreesman to return for a follow-up visit in two months. *Id.*

3           Dr. Hess next saw Dreesman on January 14, 2010. AR 269. Dr. Hess reported that

4    Dreesman's headaches had not improved and in fact were occurring somewhat more frequently. *Id.*

5    Dr. Hess again made changes to Dreesman's medication regimen and recommended that Dreesman

6    return for a follow-up visit in three months "at which time [Dr. Hess and Dreesman] could consider

7    alternative preventative strategies." *Id.* In spite of this recommendation, Dreesman did not return to

8    see Dr. Hess. AR 28.

9                    **3.    Steven J. Terrini, Ph.D. (Examining Psychologist)**

10          Dr. Steven J. Terrini, Dreesman's examining psychologist, conducted a psychiatric

11    evaluation of Dreesman on March 18, 2011. AR 374. Dr. Terrini noted that Dreesman reported

12    symptoms of depression, insomnia, and anxiety, stating, "I'm not coherent," "I'm perpetually

13    fuzzy," and "[i]t's hard to get motivated." *Id.* Dreesman reported that he had not received any

14    outpatient psychological counseling for these symptoms. *Id.* Dreesman reported suffering from

15    various symptoms of depression, including "[p]eriods of depressed mood, decreased interest in

16    usual pleasant activities . . . appetite loss, decreased ability to think and concentrate and feelings of

17    worthlessness and guilt." AR 375. Dreesman also reported having panic attacks. *Id.* With

18    medication, Dreesman stated that his panic attacks occurred two to three times per week. *Id.*

19    Without medication, Dreesman stated that his panic attacks would occur two to three times per day.

20    *Id.*

21          Dr. Terrini's examination found that Dreesman was "alert, oriented, and cooperative," and

22    that Dreesman was "a reliable historian." *Id.* Dreesman's speech and thought content were normal.

23    *Id.* With regard to intellectual functioning, Dr. Terrini found that Dreesman "appeared to be

24    functioning in the high average range," although Dreesman exhibited some reduced memory. AR

25    376. Dr. Terrini diagnosed Dreesman with panic disorder without agoraphobia and depressive

26    disorder not otherwise specified. *Id.* Dr. Terrini assigned Dreesman a Global Assessment of

27    Functioning ("GAF") score of 55. *Id.*

28
                                                    9

Dr. Terrini concluded that Dreesman was capable of performing simple and repetitive tasks, but would likely have difficulty with difficult or complex tasks. *Id.* Dr. Terrini further found that Dreesman "would likely be able to accept instructions from supervisors and interact appropriately with coworkers and the public," although he would likely "have some impairment in his ability to perform work activities on a consistent basis with special or additional instruction." AR 377. Dr. Terrini felt that Dreesman would be able to "maintain regular attendance in a workplace," but that Dreesman would be "moderately impaired in his ability to complete a normal workday or workweek without interruptions," and that he would be "moderately impaired in his ability to deal with the stress encountered in [a] competitive workplace." *Id.*

### 4. Duke Fisher, M.D. (Treating Psychiatrist)

On May 25, 2011, Dreesman received a psychiatric evaluation from a nurse practitioner. AR 419. Dreesman reported that he was having frequent migraines, anxiety attacks, and depression. *Id.* Dreesman confirmed that he had not received counseling and that he had not visited a neurologist in over a year. AR 419-420. The nurse practitioner strongly encouraged Dreesman to consider non-pharmacological ways of managing pain and noted that Dreesman elected to discuss his medications with his primary care physician. AR 421. The nurse practitioner further noted that Dreesman stated that he wanted to pursue permanent disability. AR 422.

Although Dr. Duke Fisher, Dreesman's treating psychiatrist, signed Dreesman's initial psychiatric evaluation form on June 1, 2011, *id.*, there is no evidence that Dr. Fisher actually treated Dreesman prior to June 13, 2011, AR 423. On June 13, 2011, Dr. Fisher noted that Dreesman had elected to discuss his medications with his primary care physician. *Id.* Dr. Fisher encouraged Dreesman to find non-pharmacological ways to manage pain. *Id.* Dreesman did not return to see Dr. Fisher. AR 29.

### B. The ALJ's Decision to Discount Portions of the Opinions of Drs. Prodromou and Terrini

The ALJ concluded that some portions of the medical opinions of Drs. Prodromou and Terrini were entitled to "reduced probative weight" because they were not consistent with evidence in the "objective medical record." AR 30-31. Specifically, the ALJ concluded that the "objective

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

1   medical record is largely devoid of objective signs" to support Dr. Prodromou's opinion that

2   Dreesman's anxiety and depression were so disabling that Dreesman was incapable of performing

3   even low stress work. AR 30. The ALJ reasoned that Dreesman's failure to "seek psychiatric

4   treatment and [the] generally normal findings of [Dreesman's] consultative examination by a

5   mental health professional" further undermined Dr. Prodromou's conclusions regarding

6   Dreesman's depression and anxiety. *Id.*

7       As to Dr. Terrini's medical opinion, the ALJ found that the "limitations regarding

8   [Dreesman's] ability to work without special supervision, complete a workday or workweek, and

9   deal with workplace stress [are] inconsistent with the objective signs seen during the consultative

10  exam, which were largely normal except for some decreased memory." AR 31. The ALJ did accord

11  substantial probative weight to Dr. Terrini's "limitations regarding [Dreesman's] ability to perform

12  detailed work . . . because they are consistent with the objective findings that the claimant has some

13  decreased memory." *Id.*

14       Dreesman challenges the ALJ's decision to discount these medical opinions, arguing that

15  there were "objective signs" of anxiety and depression in the medical record in the form of

16  Dreesman's reported symptoms of depression and anxiety. Pl. MSJ at 17-18. In making this

17  argument, Dreesman appears to suggest that the ALJ either ignored Dreesman's reports of these

18  symptoms or concluded that Dreesman's self-reports did not constitute "objective" medical

19  evidence.

20       Dreesman misreads the ALJ's opinion, which nowhere suggests that the ALJ ignored or

21  rejected Dreesman's reported psychiatric symptoms. The ALJ acknowledged that Dreesman suffers

22  from "migraines . . . panic and anxiety disorder without agoraphobia, and depressive disorder." AR

23  24. Further, in discussing the medical evidence, the ALJ repeatedly referred to Dreesman's

24  reported symptoms of depression and anxiety. *See, e.g.*, AR 28 ("[Dreesman continued to complain

25  to his primary care physician that his medications were ineffective at controlling his psychiatric

26  symptoms in January 2011 . . . ."); *id.* (at the examination by Dr. Terrini, "[Dreesman] gave

27  subjective complaints of depression and anxiety . . . ."). Thus, there is no basis for concluding that

28

11

the ALJ overlooked Dreesman's reported psychiatric symptoms. Rather, the ALJ found that other objective medical evidence in the record—namely, Dreesman's failure to seek counseling or follow-up psychiatric care in spite of his persistent complaints regarding depression and anxiety, and the largely normal findings from Dr. Terrini's consultative exam—undermined Dreesman's reports concerning the *severity* of his symptoms and supported the ALJ's conclusion that Dreesman was not severely impaired as a result of his psychiatric symptoms. AR 29-30.

Although ALJs are required to accord substantial weight to the opinions of treating physicians, an ALJ may discount the opinion of a treating physician as long as the ALJ gives "specific and legitimate reasons" for doing so that are supported by substantial evidence in the record. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). This standard was met here. With respect to Dr. Prodromou, the ALJ specifically and legitimately identified Dreesman's failure to pursue counseling or follow-up psychiatric care and the largely normal findings from Dr. Terrini's consultative exam as reasons for discounting Dr. Prodromou's opinion that Dreesman's anxiety and depression rendered him incapable of performing even low stress work. AR 30. The ALJ similarly cited Dreesman's normal performance on his consultative psychiatric exam as a specific and legitimate reason for rejecting portions of Dr. Terrini's report that were inconsistent with that performance. Although Dreesman clearly disagrees with the ALJ's decision to discount this opinion evidence, Dreesman has not shown that the ALJ's decision was not supported by substantial evidence or that it resulted from legal error.[2]

C.     **The ALJ's Credibility Determination**

The ALJ also determined that Dreesman was not fully credible. AR 29. Although the ALJ ultimately concluded that Dreesman's "medically determinable ailments could reasonably be expected to cause [Dreesman's] alleged symptoms," the ALJ found that Dreesman's statements "concerning the intensity, persistence, and limiting effects" of his symptoms were not credible. *Id.* As a basis for this credibility finding, the ALJ noted that although Dreesman reported that his

---

[2] Later in his Motion for Summary Judgment, Dreesman argues again that the ALJ improperly discounted Dr. Prodromou's opinion. Pl. MSJ at 21-22. This argument is duplicative of the argument addressed in the above section, and the Court will not address it further.

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

migraines were sometimes so severe that Dreesman entertained suicidal thoughts, Dreesman failed to pursue neurological treatment in spite of a recommendation that he do so. *Id.* The ALJ further noted that Dreesman had not sought counseling or psychiatric treatment for his depression and anxiety, and that Dreesman had rejected suggestions that he explore alternative, non-pharmacological means of dealing with his anxiety and depression. AR 29-30. Finally, the ALJ cited the "mostly normal" results of Dr. Terrini's consultative exam, which was the only detailed psychiatric evaluation of Dreesman conducted by a mental health specialist, as another factor that undermined Dreesman's credibility with respect to the severity and disabling nature of Dreesman's medical impairments. *Id.*

Dreesman challenges the ALJ's credibility finding on two grounds. First, Dreesman claims that the record evidence does not support the ALJ's finding that Dreesman failed to seek recommended follow-up care from a neurologist, psychiatrist, or counselor. Pl. MSJ at 19-20. Second, Dreesman contends that a disability claimant's failure to seek treatment is not a basis for an adverse credibility finding. *Id.* at 20-21. Neither contention is correct.

Initially, the ALJ did not misconstrue the record in determining that Dreesman had failed to seek recommended follow-up care for both his migraines and his psychiatric symptoms. Contrary to Dreesman's assertion, the January 14, 2010 treatment notes of Dreesman's neurologist, Dr. Hess, clearly state: "The patient will return to the Neurology Clinic in about three months at which time we could consider alternative preventative strategies." AR 270. In spite of this, Dreesman did not return to see Dr. Hess. AR 28; *see also* AR 420 (Dreesman acknowledging that as of May 25, 2011, he had not seen a neurologist in over a year). Likewise, the record clearly shows that Dr. Fisher, the psychiatrist who treated Dreesman on June 13, 2011, recommended that Dreesman find "non-pharmacological ways to manage pain," but that Dreesman did not follow up on this suggestion. AR 423. Finally, although Dreesman was encouraged on several occasions to begin counseling to help manage his psychiatric symptoms, AR 254, 413, there is no evidence that Dreesman ever established treatment with a counselor. *Accord* AR 419 (Dreesman acknowledging on May 25, 2011 that he had not seen a therapist in 27 years). Accordingly, substantial evidence in

13

1    the record supports the ALJ's factual finding that Dreesman did not seek recommended treatments

2    for his migraines, depression, and anxiety.

3            Furthermore, Dreesman is incorrect in asserting that a disability claimant's failure to seek

4    treatment or follow a prescribed course of treatment cannot be the basis for a finding that the

5    claimant is not fully credible. Instead, Ninth Circuit "case law is clear that if a claimant complains

6    about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain,

7    an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*

8    *v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th

9    Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.");

10    *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (same). The logic behind relying on a failure to

11    seek treatment for pain as a basis for concluding that a disability claimant's reports of disabling

12    pain are not fully credible is that seeking relief from pain is a "normal reaction," and because

13    "modern medicine is often successful in providing some relief." *Orn*, 495 F.3d at 638. This logic

14    applies to depression and anxiety as well: a normal human reaction is to seek relief from these

15    conditions, and modern medicine can often provide some relief. *Accord Molina v. Astrue*, 674 F.3d

16    1104, 1113 (9th Cir. 2012) ("[T]o the extent the ALJ implicitly considered [the claimant's] failure

17    to follow Wheelwright's advice that she seek counseling [for anxiety symptoms], the ALJ did not

18    err. We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on

19    unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

20    treatment." (internal quotation marks omitted)). Thus, the ALJ did not err in basing her adverse

21    credibility finding on Dreesman's failure to follow recommended treatments for his migraines,

22    depression, and anxiety.

23            Dreesman's authorities are not to the contrary. Dreesman relies on *Nichols v. Califano*, 556

24    F.2d 931 (9th Cir. 1977), and *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), but neither case is

25    on point. *Nichols* concerns the standard that applies when an ALJ concludes that a disability

26    claimant's "willful" refusal of treatment precludes a finding of disability. 556 F.2d at 933. This

27    standard is inapplicable here, as the ALJ did not deny disability benefits based on a willful refusal

28

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

of treatment. *Nguyen*, in turn, holds that a claimant's delay in seeking treatment for depression is not a basis for rejecting a *physician's* diagnosis of depression. 100 F.3d at 1465. *Nguyen* says nothing about whether a claimant's failure to follow a recommended course of treatment for depression is a factor that can adversely impact the claimant's credibility concerning the severity of his psychiatric symptoms.

In sum, the Court concludes both that substantial evidence supports the ALJ's finding that Dreesman failed to follow recommended treatments for his migraines, depression, and anxiety and that the ALJ did not commit legal error in concluding that Dreesman's failure to follow his doctors' treatment recommendations undermined the credibility of Dreesman's testimony about the severity of his symptoms.

### D.    The ALJ's Consideration of the Side Effects of Dreesman's Medications

Dreesman next contends that the ALJ improperly disregarded evidence that Dreesman's medications were causing disabling side effects. Pl. MSJ at 22-23. However, contrary to Dreesman's assertion, the ALJ's opinion repeatedly referenced side effects that were likely caused by Dreesman's many medications. For instance, the ALJ noted that the psychiatric evaluation conducted on May 25, 2011 found that Dreesman's "numerous pain medications were likely contributing to [Dreesman's] alleged memory problems." AR 29. The ALJ further observed that "even though Dr. Fisher reported that [Dreesman's] migraine medications were contributing to his symptomatology, [Dreesman's] treating physician did not reduce [Dreesman's] medication dosages." *Id.* The ALJ subsequently noted that Dreesman reported that he experienced "lightheadedness" from his hypertension medications, but that "this resolved when his dosage level was modified." AR 30. Moreover, the ALJ acknowledged that Dreesman reported "decreased memory[] and decreased concentration." AR 27.

Although Dreesman points to places in the record where these side effects were described in slightly different terms—such as where Dreesman spoke of "dizziness" as opposed to "lightheadedness," or "fuzzy thinking," as opposed to "decreased memory[] and decreased concentration," Pl. MSJ at 22-23—Dreesman does not identify any significant and distinct side

1  effect that the ALJ failed to address. *Accord Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006,

2  1012 (9th Cir. 2003) ("[T]he ALJ is not required to discuss evidence that is neither significant nor

3  probative . . . ."). Moreover, Dreesman does not explain how these side effects would have altered

4  the limitations that the ALJ included in her RFC finding, wherein the ALJ concluded that

5  Dreesman was capable of performing only unskilled work requiring more than occasional

6  interaction with others. AR 27. Accordingly, the Court concludes that the ALJ did not err by failing

7  to adequately address the side effects of Dreesman's medications.

8  **E.       Testimony of Cathy Dreesman**

9           Dreesman argues that the ALJ misconstrued the testimony of Dreesman's wife, Cathy

10  Dreesman ("Cathy"). Pl. MSJ at 25-26. The ALJ found that Cathy "testified that [Dreesman] is

11  mostly independent in performing his activities of daily living." AR 26. The ALJ also based her

12  finding that Dreesman had only "moderate" difficulties with social functioning, in part, on the fact

13  that "[Dreesman] has been able to maintain a long marriage with his wife and currently lives with

14  her and their two adult children." *Id.* Dreesman objects to both of these findings, arguing that the

15  ALJ ignored Cathy's testimony concerning the debilitating effects of Dreesman's migraines and

16  Dreesman's testimony that he is "always in a foul mood. If you talk to my wife, I mean, it's hard to

17  live with me." Pl. MSJ at 26 (internal quotation marks omitted).

18           The Court finds that substantial evidence supports the ALJ's account of Cathy's testimony.

19  Although Cathy testified that Dreesman's migraines were very debilitating when they occurred,

20  this is not inconsistent with the overall conclusion that Dreesman is largely independent in the

21  activities of daily living. Moreover, the ALJ was entitled to rely on Cathy's express statement that,

22  except for issues for reduced memory, Dreesman is "fairly self sufficient in terms of taking care of

23  himself."[3] AR 98-99. Similarly, the fact that Dreesman testified that he is "always in a foul mood,"

24  is not inconsistent with the ALJ's (objectively true) observation that Dreesman has maintained a

25  long marriage and currently lives with Cathy and their two adult children.

26  

27  [3] Given that the ALJ included Dreesman's memory loss as a limitation in the RFC assessment, the Court finds that the ALJ adequately accounted for Cathy's testimony that Dreesman suffers from difficulties with memory.

28  
16

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

1    Dreesman further argues that the ALJ provided an invalid rationale for finding that Cathy's

2    testimony regarding the severity of Dreesman's impairments was entitled to "low weight." Pl. MSJ

3    at 27. The ALJ reasoned that "although [Cathy] presented herself as sincere, her statements are not

4    supported by [Dreesman's] lack of neurological treatment and psychiatric counseling." AR 30.

5    This is the same rationale that supported the ALJ's finding that Dreesman himself was not fully

6    credible, and the Court finds that it is valid for the same reasons. As discussed above, *see supra*

7    Part III.C, a failure to pursue recommended treatment is an appropriate basis for an adverse

8    credibility finding, and once "the ALJ gives germane reasons for rejecting testimony by one

9    witness, the ALJ need only point to those reasons when rejecting similar testimony by a different

10   witness." *Molina*, 674 F.3d at 1114 (citing *Valentine*, 574 F.3d at 694). Accordingly, the Court

11   concludes that the ALJ did not provide an invalid reason for discounting Cathy's lay testimony.

12       **F.      Limitations Included in the ALJ's Questions to the Vocational Expert**

13       Finally, Dreesman claims that the ALJ erred by failing to include all of Dreesman's claimed

14   limitations in the hypotheticals the ALJ posed to the vocational expert. Pl. MSJ at 28-29.

15   Specifically, Dreesman argues that "[t]he hypothetical question did not include Dr. Terrini's

16   opinion [that] Dreesman would have some impairment in his ability to perform work activities on a

17   consistent basis without special or additional supervision." *Id.* at 28. As noted above, however, the

18   ALJ expressly rejected Dr. Terrini's opinion regarding Dreesman's need for additional supervision.

19   *See supra* Part III.B (quoting AR 31). This argument is thus derivative of Dreesman's previous

20   argument that the ALJ ought to have accepted Dr. Terrini's opinion that Dreesman could not work

21   without additional supervision. *Accord Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th

22   Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [the claimant] simply restates her

23   argument that the ALJ's RFC finding did not account for all her limitations because the ALJ

24   improperly discounted her testimony and the testimony of medical experts. As discussed above, we

25   conclude the ALJ did not.").

26       The Court has already concluded that the ALJ did not err by rejecting the portion of Dr.

27   Terrini's opinion that found that Dreesman could not work without additional or special

28

Case No.: 13-CV-02009-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   supervision. *See supra* Part III.B. It follows that the ALJ did not err by declining to include this

2   limitation in the questions posed to the vocational expert, and Dreesman's argument on this point

3   fails. *See, e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (an ALJ may limit

4   hypotheticals to restrictions supported by substantial evidence on the record).

5   **IV.    CONCLUSION**

6         For the foregoing reasons, IT IS ORDERED THAT:

7         1.    Plaintiff's motion for summary judgment is DENIED;

8         2.    Defendant's cross-motion for summary judgment is GRANTED; and

9         3.    The Clerk shall close the file.

10

11   Dated: September 15, 2014

12                                           LUCY H. KOH
                                        United States District Judge

**United States District Court**
For the Northern District of California

18